Ramsey v. Root.

No. 27,813.

G. L. RAMSEY, *Appellant*, v. C. M. ROOT, *Appellee.*

(263 Pac. 796.)

SYLLABUS BY THE COURT.

EVIDENCE—*Hearsay—Oral Statements of Secretary of Corporation.* To establish the material fact that the capital stock of a corporation, a part of which had been sold and assigned by the defendant to plaintiff, had not been paid for in full as represented, it was proposed by the plaintiff to prove the fact by what the secretary of the corporation had told him. *Held*, the offered testimony was hearsay and was inadmissible.

Appeal from Butler district court, division No. 1; ALLISON T. AYRES, judge. Opinion filed February 11, 1928. Affirmed.

*B. R. Leydig, K. M. Geddes*, both of El Dorado, and *John J. Jones*, of Chanute, for the appellant.

*J. B. McKay*, of El Dorado, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal brings up for review a ruling of the trial court excluding certain testimony offered by plaintiff and sustaining defendant's demurrer to plaintiff's evidence. G. L. Ramsey sued C. M. Root to recover $10,000, the amount paid to Root for capital stock of the Penn-Tex Oil Company, upon the grounds that defendant had made false and fraudulent representations in the sale; and for the loss sustained, which was the full amount paid for the stock with interest thereon, this action was brought.

It was alleged that defendant represented that he was the owner of a large block of the shares of the capital stock of the company; that the company had been duly and legally organized; that it had an authorized capital of $100,000, which was fully paid for; that the actual paid-in capital made the company a valuable going concern and an investment in the stock profitable and safe, and plaintiff stated that relying on these representations he purchased 1,000 shares of the stock at the par value of $10 per share and paid $10,000 therefor.

It was alleged that the company was not a *bona fide* corporation but was wholly a paper concern, that when the charter was obtained it was represented to the authorities that the stock had been fully subscribed and paid for, when as a matter of fact no payments had

Evidence, 22 C. J. p. 199 n. 36.

been made for any of the stock and no funds of any character had been placed in the treasury of the corporation; that no schedule of the property owned by the company had ever been filed with the secretary of state as required by law; that no affidavit that twenty per cent of the stock of the company had been paid for was ever filed with the secretary of state; and no certificate had ever been issued by the secretary of state authorizing the company to do business as a corporation. It was further alleged that no property, funds or assets ever came into the corporation, except the application fee, a recording fee and a capitalization fee that were obtained and paid to the state; that defendant was the president of the company, and that it never functioned as a corporation or did any business except to sell stock, and that the funds derived from such sales as were made were not used for the benefit of the corporation, but were appropriated to the individual use and benefit of the defendant and those associated with him.

The answer of defendant, except as to an admission that the company had been chartered and organized, was a general denial, and with it the further defense that the action was barred by the statute of limitations. There was testimony that a charter was granted to the company, that the incorporators were the defendant, who appeared to own 4,980 shares, E. M. Neff, the secretary of the corporation, who owned a like number of shares, and three other incorporators in whose hands were the remaining forty shares.

Proof was offered tending to show that the application presented to the charter board represented that the stock had been fully subscribed and paid for; further, that no schedule of the property owned by the company had ever been filed with the secretary of state; nor was there any affidavit filed to the effect that twenty per cent of the stock of the company had been paid for; and no certificate of authority had been issued by the secretary of state authorizing the company to do business as a corporation. Plaintiff testified that he was approached by defendant and Neff, the president and secretary of the corporation, in July, 1919, who asked him to purchase stock in the company, saying that the capital stock had been fully paid and that they were going to look after the business personally and would make a go of it. Upon their representations plaintiff purchased 1,000 shares of the stock held by Root and gave him his promissory note for $10,000, which was subsequently paid. In the charter it appeared that the defendant Root owned 4,980 shares, that Neff owned 4,980 shares, and the remaining 40 shares of

the capital stock were represented to be held by the other three in-corporators. It was shown that the shares sold to the plaintiff were those of the defendant, and that he was out of the state most of the time from July, 1919, to February, 1922. About the latter date plaintiff was told by Neff, the secretary of the company, that nothing had been paid into the treasury for stock; that defendant had sold stock, but that he had never turned a dollar of it into the company; and that this was the first information received by plaintiff of the falsity of the statements made by defendant as to the fact that the stock was paid for. The testimony of plaintiff as to what he had been told by Neff, the secretary, in respect to the nonpayment for capital stock, and that no money or notes had ever come to the treasury from sales of stock, was held by the court to be hearsay and for that reason it was subsequently stricken out. It was allowed to stand as tending to prove the time when plaintiff first learned that a fraud had been committed upon him in the stock transaction. With this testimony stricken, the court then held that there was not sufficient evidence to sustain the claim of fraud. The demurrer to plaintiff's evidence was sustained and judgment given for defendant.

As has been noted the action was brought against Root personally for fraud in the sale of stock owned by himself. It was not a chal-lenge of the existence of the corporation or of the validity of its organization and operations, a proceeding that could only be brought by the state through its proper officers. There was testimony tend-ing to show that the corporation had not complied with the statu-tory requirements essential to the exercise of corporate functions or of its right to begin business. This testimony would have been ap-plicable and perhaps potent if the action had been one by the state against the corporation. It appears that the oil company had as-sumed to exercise the functions of a corporation for a period of about two years and was actually operating in the oil fields. Plain-tiff had visited the office or headquarters of the corporation and had learned something of the drilling and work being done by the oil company.

The principal ground of plaintiff's complaint was that defendant had falsely represented that the capital stock of the corporation had been fully paid in, when as a matter of fact no money had been paid into the treasury. Capital stock may be paid for with property as well as money, but whether or not property had been turned into

the company in exchange for stock is not stated. The testimony on that issue was confined to statements made by Neff to plaintiff to the effect that the stock had not been paid for in money or notes, and the principal question in the case is whether his statements to the plaintiff were competent as proof to establish the fact that the stock had not been paid for.

What the witness undertook to tell the jury was derived from the unsworn statements of Neff. There was no opportunity to test the truth of Neff's statements; no chance to investigate the motives that may have actuated him in making the statements. The plaintiff was not testifying to facts within his own knowledge, but was merely stating what another had told him. He was offering unsworn statements to prove a material fact, the most material fact involved in the issue between the parties. The credit to be given the statements did not depend upon the veracity of the witness but rather upon the veracity and competency of his informant, whose declarations were not made under oath and the truth of which could not be tested by any of the means provided by law. The statements we think were purely hearsay and were not within any of the exceptions to the rule that hearsay statements are inadmissible. Considerable has been said about the fact that Neff was secretary of the company and had access to its books and records, and in the nature of things had knowledge of its books and record of its affairs, but his knowledge, however gained, did not make his unsworn statements to the plaintiff other than hearsay. Nor did the fact that the books and records had been placed beyond the reach of the parties render these statements admissible. The court did not err in striking out the hearsay statements, and it is manifest that when these were eliminated there was no valid proof in the case to establish the controverted issue.

The judgment is affirmed.